UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

HORACE W. CRUMP,

        Plaintiff,         Case No. 2:11-cv-45

v.         Honorable R. Allan Edgar

JIM ARMSTRONG,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. **The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee.** Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Discussion

I. Factual allegations

Plaintiff Horace W. Crump #236528, a prisoner at the G. Robert Cotton Correctional Facility, filed this 42 U.S.C. § 1983 action against Defendants Step III Grievance Respondent Jim Armstrong, MDOC Director Patricia Caruso, MDOC Administrator Richard Stapleton, Grievance Coordinator S. Farley, Step I Grievance Respondent C. Hessel, Step I Grievance Reviewer Mitchell Perry, Step I Grievance Reviewer Assistant Deputy Warden C. Daley, Step I Grievance Reviewer Assistant Deputy Warden Scott Sprader, Step II Grievance Respondent Warden Barry Davis, Step II Grievance Respondent Warden Jeri-Ann Sherry, and the Michigan Department of Corrections (MDOC).

In his complaint, Plaintiff alleges that on March 4, 2008, he filed a grievance regarding his condition as a member of the "Shi'a" religion in the MDOC. The step I and II respondents found that this was a non-grievable issue, but advised Plaintiff that he could petition for a separate religious service, which he did. Plaintiff sent his step III appeal to Defendant Caruso, but it was never logged into the system.

Plaintiff alleges that on May 26, 2008, Plaintiff wrote a grievance regarding his transfer from the Kinross Temporary Facility (KTF) / Chippewa Correctional Facility (URF) to the Newberry Correctional Facility (NCF) without his property. Defendant Farley called Plaintiff to his office and told him that NCF had nothing to do with the failure to transfer his property and advised him to send his grievance to KTF or URF. Defendant Farley asked Plaintiff who he had "pissed off" and refused to file his grievance. After Plaintiff threatened to grieve him, Defendant Farley told him that he would file the grievance if he split it into three grievances.

On June 2, 2008, Plaintiff submitted three grievances typed by prisoner McConnell Adams regarding the lack of clothing, medication, and hygiene items. Defendant Farley again refused to file Plaintiff's grievances. On June 3, 2008, Plaintiff sent a grievance to KTF, but never received a response. On June 20, 2008, prisoner Adams typed Plaintiff a letter to send to Defendant Perry, which went unanswered. During this time, NCF Resident Unit Manager Lynn Olson made numerous calls to KTF / URF regarding Plaintiff's missing property. On August 13, 2008, Plaintiff filed a grievance detailing all of his complaints, which was rejected by Defendants Hessel and Daley for being untimely despite the fact that Plaintiff explained that he had been transferred and had previously attempted to file the grievance. Defendants Hessel and Daley also ordered Plaintiff to file a grievance with NCF, despite the fact that NCF never had control of his property. Defendant Hessel never responded to Plaintiff's request for a step II appeal form.

On October 12, 2008, Plaintiff filed a fifth grievance against officials at NCF regarding his transfer, but Defendants Farley, Sprader and Davis rejected Plaintiff's grievance because it contained multiple issues and was untimely. The rejection was upheld at step III by Defendants Caruso and Armstrong. On October 13, 2008, Plaintiff filed a third grievance against officials at KTF / URF regarding his property and other issues surrounding his transfer. Defendants Hessel, Daley, Sherry, Caruso and Armstrong all held that the grievance was properly rejected as untimely. On November 12, 2008, Plaintiff received a response from Defendant Perry, indicating that Plaintiff's frustration was understandable.

On November 24, 2008, Plaintiff sent a staff corruption grievance to Defendant Caruso regarding the repeated rejection of his grievances by Defendants Farley and Davis. Plaintiff's attempt to file the grievance directly at step III was rejected and the grievance was sent to Defendant

Farley for processing at step I. Defendant Sprader interviewed Plaintiff and concluded that Defendant Farley had acted professionally. Plaintiff claims that he was assaulted on January 4, 2009. Plaintiff received a Notice of Intent to classify to segregation and requested an investigation and hearing. On January 8, 2009, Plaintiff was transferred to segregation without a hearing or investigation. Plaintiff filed a grievance regarding the lack of hearing on January 13, 2009, to no avail.

Plaintiff claims that Defendants' failure to properly handle his grievances deprived him of his ability to get relief from a variety of federal and state law violations by prison officials. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949

(quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment.

*See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. Mar. 12, 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

Plaintiff claims that Defendants' handling of his grievances denied him relief from the loss of his property, an appropriate religious service, and to relief from being placed in segregation without a hearing. However, Plaintiff fails to allege that Defendants were actually responsible for any of the underlying misconduct, but merely asserts that they failed to remedy his situation by responding appropriately to his grievances. Recently, in the context of considering retaliation claims, the Sixth Circuit has stated that there is a First Amendment right to file a institutional grievance. Depending upon whether the retaliation arose from an inmate's constitutionally protected conduct, either a First Amendment or due process standard may apply to a retaliation claim. *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000). If the inmate is engaged in constitutionally protected conduct, the First Amendment standard enunciated in *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir.1999) (en banc) applies. *Thaddeus-X* requires the prisoner to establish that (1) he was engaged in protected conduct, (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct, and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Under the due process standard, where the prisoner was not engaged in constitutionally protected conduct, the prisoner must show "an egregious abuse of governmental power" or behavior that "shocks the

conscience". *Herron*, 203 F.3d at 414 (citing *Cale v. Johnson*, 861 F.2d 943, 950-51 (6th Cir. 1988)).

In two cases involving a claim of retaliation for filing institutional grievances, the Sixth Circuit applied the *Thaddeus-X* standard, thus indicating that an inmate's filing of institutional grievances is constitutionally protected conduct. *See Shehee v. Luttrell*, 199 F.3d 295, 300-301 (6th Cir. 1999); *Scott v. Kilchermann*, No. 99-1711, 2000 WL 1434456, at *2 (6th Cir. Sept. 18, 2000). In *Shehee*, 199 F.3d at 300-301, the Sixth Circuit applied the *Thaddeus-X* standard and expressly stated that the filing of institutional grievances is constitutionally-protected conduct for which a prisoner cannot be retaliated against. Similarly, in the unpublished decision of *Scott*, 2000 WL 1434456, at *2, the Sixth Circuit indicated that an inmate has a First Amendment right to file a grievance against prison officials and not to be retaliated against under the *Thaddeus-X* standard as long as the grievance is not frivolous. *Accord Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir.1996) (in the context of a retaliation claim, an involuntarily committed mental patient, who is "an individual in the custody of the state," has a constitutional right to petition to use the hospital grievance procedure); *see also Herron*, 203 F.3d at 415 (in the context of a retaliation claim, inmate had a First Amendment right to file a nonfrivolous "grievance," i.e., a lawsuit, against prisoner officials).

However, Plaintiff has not alleged that Defendants' actions were taken in a retaliatory manner. At best, his allegations support an inference that Defendants mistakenly denied and / or rejected his grievances, not that they acted against him with a retaliatory intent. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc); *see also Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (indicating that the *Thaddeus-X* standard applies to claims of retaliation against an inmate for filing lawsuits). In addition, the Sixth Circuit has never held that an inmate has an

independent constitutional right to file an institutional grievance, apart from the First Amendment right not to be retaliated against for filing one.

In addition, even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file an institutional grievances. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim.

Moreover, liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and

that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Armstrong, Caruso, Stapleton, Farley, Hessel, Perry, Daley, Sprader, Davis, and Sherry were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Armstrong, Caruso, Stapleton, Farley, Hessel, Perry, Daley, Sprader, Davis, and Sherry had in this action involve the denial of administrative grievances or the failure to act. Defendants Armstrong, Caruso, Stapleton,

Farley, Hessel, Perry, Daley, Sprader, Davis, and Sherry cannot be liable for such conduct under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Armstrong, Caruso, Stapleton, Farley, Hessel, Perry, Daley, Sprader, Davis, and Sherry are properly dismissed for lack of personal involvement.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:      5/16/2011                              /s/ R. Allan Edgar
                                                  R. Allan Edgar
                                                  United States District Judge